# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

HEERY INTERNATIONAL, INC.,    :
a Georgia corporation,    :
    :
       Plaintiff,    :
    :   CIVIL ACTION NO.
    v.    :   1:08-CV-1560-JOF
    :
DEKALB COUNTY SCHOOL    :
DISTRICT, GEORGIA, et al.,    :
    :
       Defendants.    :

## OPINION AND ORDER

The instant matter is before the court on Defendants' Motion to Dismiss [6].

## I.    Background

In 1997 and 2002, voters in DeKalb County approved a Special Purpose Local Option Tax (respectively, "SPLOST I" and "SPLOST II") to finance school related capital inprovements (collectively, the "SPLOST Program"). On October 30, 1997, DeKalb County School District ("DCSD") entered into a contract with Plaintiff and  E.R. Mitchell Construction Company, Inc. ("E.R."), to coordinate and manage nearly $800 million in SPLOST Program construction projects. The parties renewed their agreement in July 2003. Plaintiff alleges that sometime between 2004 and 2005 it "brought to the School District's attention its serious concern that substantial SPLOST funds that could be invested in DeKalb

County schools were instead being spent on the School District's attorneys, who were actively interfering with Heery/Mitchell's progress." (Cmpl. ¶ 19). In late 2004 DCSD hired Patricia Pope to oversee the SPLOST program and hired an independent consulting and auditing firm to review Plaintiff and E.R.'s performance.

On April 19, 2006, DCSD suspended its contract with Plaintiff. The parties extended the suspension on August 7, 2006, and October 1, 2006. On February 1, 2007, Plaintiff exercised its right under its contract with DCSD to resign with seven days' notice. DCSD terminated Plaintiff's contract for cause on February 6, 2007, one day before Plaintiff's resignation took effect. On February 20, 2007, Plaintiff and E.R. filed a lawsuit against DCSD in the Superior Court of DeKalb County, Georgia for breach of contract and demanded payment for more than $500,000 in invoices. DCSD counterclaimed for fraud, breach of fiduciary duty, and breach of contract. On March 24, 2008, DCSD added a claim under the Georgia RICO Act to its counterclaims. To this court's knowledge, this matter is still pending in state court.

DCSD released a three-page document to the press discussing its counterclaims and the Superior Court litigation. The press release included the following statements:

- After painstakingly sifting through Heery's records, and, after taking many depositions of Heery/Mitchell's personnel, our attorneys filed a counterclaim in court alleging that Heery/Mitchell has defrauded the School District for hundreds of thousands of dollars in multiple ways, including . . .

2

- In addition to fraud, [the School District's] counterclaim alleges that Heery/Mitchell has utterly failed in its management duties, costing the School District tens of millions of dollars.

- Today, the School District will be amending its counterclaims to ask the court and jury to award the taxpayers over 45 million dollars in out-of-pocket costs and damages, and because of the systematic and pervasive misconduct, will be asking the jury to award treble damages against Heery/Mitchell under the Georgia RICO statute.

- During Heery/Mitchell's tenure, the District had many cost overruns and change orders; since that time, under Pat Pope's tenure, very few change orders or cost overruns have occurred.

- The DeKalb County School District is not the only school district to have experienced problems with Heery. Similar or related instances have been reported regarding school projects in Dallas and Houston, Texas; Lakeland, Florida; and Seattle Washington.

(Cmpl. Ex. 10).

The Atlanta Journal Constitution ("the AJC") published an article on its website on March 24 and in print on March 25 based on the press release. (*Id.* Ex. 11-12). On March 28 Plaintiff sent a letter to DCSD demanding that they retract the statement beginning with "The DeKalb County School District is not the only . . ." or face suit. *Id.* Ex. 13). n April 1, 2008, counsel for DCSD sent a letter to Plaintiff stating that (1) any concerns about the media's description of DCSD's claims should be directed to the media, and (2) Plaintiff's performance on other projects could be gleaned from publicly available sources available to Plaintiff as well as DCSD. (*Id.* Ex. 14). DCSD refused to retract the press release. (*Id.*).

3

On April 25, 2008, Plaintiff filed a complaint against Defendants DeKalb County School District ("DCSD"); DCSD Superintendent, Crawford Lewis; and DCSD Board Members, Lynn Cherry Grant, Thomas Bowen, Cassandra Anderson-Littlejohn, Elizabeth Andrews, Sarah Copelin-Wood, Jay Cunningham, Elizabeth Joyner, Jim Redovian, and Zepora Roberts, in their official and individual capacities, in this court. Plaintiff is seeking damages for libel, defamation and deprivation of its protected rights under O.C.G.A. §§ 51-5-3, 51-5-4, and 42 U.S.C. § 1983. Plaintiff contends that Defendants should be liable under section 1983 because they have violated (1) Plaintiff's "right to contract by making a policy not to contract with Heery for the DeKalb County School District project"; (2) "conspiring to intentionally and maliciously injure and stigmatize Heery's business reputation and interfere with its contracts and business relationships"; and (3) intentionally printing, publishing and circulating false and defamatory statements against Heery's reputation." (Cmpl. ¶ 76). Plaintiff's complaint mentions freedom to contract, due process liberty interest in business reputation, and equal protection.

Defendants filed the instant Motion to Dismiss on June 6, 2008. Defendants maintain that (1) Plaintiff has not adequately alleged a violation of Plaintiff's constitutional or federal rights; (2) Plaintiff's section 1983 claim against the Board members in their official capacities is redundant; (3) Plaintiff's section 1983 claims against the Board members in their individual capacities is barred by qualified immunity; (4) Plaintiff's state law claims

4

against DCSD and the Board members in their official capacities are barred by sovereign immunity; (5) Plaintiff's state law claims against the Board members in their individual capacities are insufficiently plead; and (6) Plaintiff's defamation claims are barred by the Georgia Anti-SLAPP statute. Most notably, Plaintiff contends that it has adequately stated a constitutional claim for First Amendment retaliation, a violation of the equal protection clause, and a violation of the due process clause of the Fourteenth Amendment. Plaintiff rests its claims on the Defendants' decision to terminate the contract between the parties after Plaintiff spoke to the Board about the use of SPLOST funds to pay DCSD attorneys.

## II.     Discussion

Plaintiff's pleadings raise three possible grounds for its sole federal claim under section 1983: retaliation in violation of the First Amendment, Equal Protection, and Due Process under the Fourteenth Amendment.[1] In order to show a violation of § 1983, Plaintiff must show both that the conduct complained of was committed by a person acting under color of state law, and that the conduct deprived him of rights or privileges secured by the Constitution or laws of the United States. *See* 42 U.S.C. § 1983.

### A.     *First Amendment Retaliation*

---

[1]Plaintiff's pleadings could also be construed as raising (1) a constitutional right to contract and (2) a constitutional right to be free from defamation. The court finds both these claims to be unpersuasive.

Plaintiff alleges that Defendants retaliated against it because it made DCSD aware that SPLOST funds were being used to pay DCSD attorneys.  An employee who seeks to establish retaliation for speech protected under the First Amendment must establish, among other things, that the employee spoke as a citizen and the employee spoke on a matter of public concern.  *Battle v. Bd. of Regents*, 468 F.3d 755, 759-60 (11th Cir. 2006).  The Supreme Court established in *Garcetti v. Ceballos*, 547 U.S. 410 (2006), "that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline."  The proper inquiry as to whether an employee is speaking pursuant to his or her official duties is "a practical one."  *Garcetti*, 547 U.S. at 424.  The court should consider whether the employee made his or her statement as a citizen who does not work for the government.  *See Atkins v. Fulton County, Ga.*, 278 Fed. Appx. 964, 971 (11th Cir. 2008) (purchasing department employees spoke as public employees when they told commissioner about irregularities with the selection process for county bids); *see also Boyce v. Andrews*, 510 F.3d 1333, 1334-35 (11th Cir. 2007) (social workers' complaints about being overworked not protected even though they addressed public concern for children because they were made as personal grievance); *Phillips v. City of Dawsonville*, 499 F.3d 1239 (11th Cir. 2007) (city clerk and treasurer acted pursuant to official duties when she made statements about mayor's misuse of city funds); *D'Angelo v.*

*School Bd. of Polk County*, 497 F.3d 1203, 1210 (11th Cir. 2007) (principal's speech regarding conversion to charter school not protected); *Battle v. Board of Regents of Georgia*, 468 F.3d 755 (11th Cir. 2006) (financial aid counselor's speech to school officials about inaccuracy and fraud in student files prepared under supervisor not protected). The above law with respect to retaliation for speech protected under the First Amendment extends to independent contractors working for the government as well employees. *See Board of County Com'rs, Wabanaunsee County, Kan. v. Umbehr*, 518 U.S. 668 (1996) (county could not terminate trash hauler's contract for his criticism of county commission); *Mangieri v. DCH Healthcare Authority*, 304 F.3d 1072, 1075 (11th Cir. 2002) ("In *Umbehr*, the Supreme Court concluded that, as with government employees, government contractors are protected by the First Amendment from termination in retaliation for the exercise of their freedom of speech").

Here, DCSD "hired [Plaintiff] to provide program management services for the [SPLOST Program] projects" and to "manage[] nearly $800 million in school construction projects . . . ." (Cmpl. ¶¶ 18, 26). Plaintiff alleges that it informed the DCSD about unnecessary legal fees taking money away from the SPLOST project. Plaintiff does not allege that it made these allegations in a public meeting or that it voiced its complaints to any other person or party. The court finds that if Plaintiff indeed made such comments, it made them in the course of managing the expenses and the cost of the SPLOST program,

7

or as a government contractor rather than a citizen. Further, Plaintiff states that it raised this issue with DCSD because of its own concern that DCSC's attorneys "were actively interfering with Heery/Mitchell's progress." This motivation makes Plaintiff's speech seem far more like an unprotected personal grievance than a matter of public concern. Plaintiff cannot show that Defendants' conduct deprived it of its rights or privileges under the First Amendment.[2]

Plaintiff contends that "Defendants' defamatory statements against Plaintiff in conjunction with Defendants' taking of Plaintiff's right to contract" support a claim under the Equal Protection Clause of the United States Constitution. (Resp. at 11 n.17). Generally, there are three types of equal protection claims. The first is a challenge to a classification created on the face of a statute or a municipal policy. *See E & T Realty v. Strickland*, 830 F.2d 1107, 1112 n. 5 (11th Cir. 1987). The second and third categories of equal protection claims include assertions either that the neutral application of a neutral

---

[2]Plaintiff never mentions the words "First Amendment" or "retaliation" either in the body of its complaint or under the section discussing section 1983. In its response to Defendants' Motion to Dismiss, Plaintiff articulates this claim for the first time relying on paragraph nineteen of its complaint which states generally that Plaintiff "brought to the School District's attention its serious concern that substantial SPLOST funds that could be invested in DeKalb County schools were instead being spent on the School District's attorneys, who were actively interfering with Heery/Mitchell's progress." Defendants contend that Plaintiff is raising its First Amendment argument for the first time in its response. Further, Defendant maintains that Plaintiff's complaint is a prohibited shotgun pleading. Having found that Plaintiff's First Amendment allegations fail to state a claim as a matter of law, the court will not address Defendants' general pleading concerns.

8

statute has a disparate impact or that the defendants are unequally administering a facially neutral statute. *Id.*

Here, Plaintiff has alleged no comparator or other party whom Defendants have treated differently. They have alleged no statute, ordinance, or law which the DCSD has applied to them. The court can find no basis for a claim in equal protection.

Plaintiff likewise alleges that "Defendants' defamatory statements against Plaintiff in conjunction with Defendants' taking of Plaintiff's right to contract" support a claim under the Due Process Clause of the Fourteenth Amendment. (Resp. at 11 n.17). The Fourteenth Amendment encompasses both substantive and procedural due process. A plaintiff in a section 1983 action alleging procedural due process must show: (1) deprivation of constitutionally protected liberty or property interest; (2) state action; and (3) constitutionally inadequate process. *Cryder v. Oxendine*, 24 F.3d 175 (11th Cir. 1994). A plaintiff may have a liberty interest in his or her reputation. However, "allegations of injury to reputation alone do not support a section 1983 claim for violation of due process, and therefore must be accompanied by a constitutionally recognized injury," or deprivation of a "previously recognized property or liberty interest." *Cypress Ins. Co. v. Clark*, 144 F.3d 1435, 1436 (11th Cir. 1998). "This rule is designed to prevent the Due Process Clause from becoming an all-purpose constitutionalization of state tort law." *Id.* at 1437. To state a claim for substantive due process a plaintiff must show that the government has infringed

9

upon his "fundamental rights," or "rights that are implicit in the concept of ordered liberty."

*McKinney v. Pate*, 20 F.3d 1550, 1556 (11th Cir. 1994). Substantive due process rights are created by the Constitution, and rights resting in state tort or employment law are not generally protected. *Id.* Having considered Plaintiff's pleadings, the court can find no viable claim for either procedural or substantive due process. Plaintiff has failed to show that it has been deprived of any rights or privileges secured by the Constitution or laws of the United States.

## III.    Conclusion

It appears to the court that Plaintiff is trying to re-litigate the state law claims currently pending in superior court here using section 1983. The court DISMISSES Count I of Plaintiff's complaint alleging violations of section 1983. Having dismissed the federal claim in this matter, the court declines to exercise supplemental jurisdiction over Plaintiff's state law defamation claim in Counts II and DISMISSES it on that basis. See 28 U.S.C. § 1367(c)(3) (stating that district court may decline to exercise supplemental jurisdiction when it has dismissed all claims over which it has original jurisdiction). Having dismissed both of Plaintiff's underlying claims, the court DISMISSES AS MOOT Count III of Plaintiff's complaint addressing punitive damages. The instant order disposes of Plaintiff's action completely.

AO 72A
(Rev.8/82)

**IT IS SO ORDERED** this 25th day of February 2009.


                    _____s/ J. Owen Forrester_____
                              J. OWEN FORRESTER
                  SENIOR UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)